UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIAN BENNETT,<br><br>    Plaintiff,<br><br>    v.<br><br>BATH IRON WORKS CORPORATION,<br><br>    Defendant. | Civil Action No. |

**COMPLAINT**
**JURY TRIAL REQUESTED**
**<u>INJUNCTIVE RELIEF REQUESTED</u>**

Plaintiff, Brian Bennett ("Bennett"), by and through undersigned counsel, complains against the Defendant, Bath Iron Works Corporation ("BIW"), as follows:

JURISDICTION AND PARTIES

1. This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*

2. Bennett is a United States citizen residing in Bath, Maine.

3. BIW is a Maine business corporation which is owned by General Dynamics Corporation. BIW operates a shipyard in Bath, Maine.

4. BIW had 15 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

5. This Court has subject matter jurisdiction over Bennett's federal and state claims pursuant to 28 U.S.C. §§ 1331 and 1367.

1

6. On or about June 24, 2016, Bennett filed a timely complaint/charge of discrimination alleging disability discrimination and retaliation with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

7. On or about July 29, 2016, Bennett filed an amended complaint/charge of discrimination with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

8. On about December 29, 2016, the EEOC issued a Notice of Right to Sue with respect to Bennett's federal law claims.

9. On or about January 5, 2017, the MHRC issued a Notice of Right to Sue with respect to Bennett's state law claims.

10. Bennett has exhausted his administrative remedies with respect to all claims set forth in this Complaint.

## JURY TRIAL REQUESTED

11. Bennett requests a jury trial for all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

12. Bennett was employed at Bath Iron Works ("BIW") from April 2008 until July 13, 2016 with the exception of several months in 2011 when he was laid off.

13. BIW had over 6,000 employees in 2016.

14. BIW had more than 50 employees in Bennett's workplace at all times material to this case.

15. Bennett was hired as a Designer making $12.66 per hour. He was promoted to Planning Tech in March 2012 making $24.43 per hour. His final rate of pay was $27.05 per hour.

16. Bennett has had mental illness for more than 10 years. In 2002, he was hospitalized twice for treatment of bipolar disorder. Bennett had mood disturbances during the

winter of 2014-2015 that became worse during the summer and fall of 2015. He often felt that he was on the verge of crying. He was irritable. He had impaired stress tolerance, poor concentration, lack of focus, insomnia and other troublesome symptoms. He was depressed but not all the time. He would feel relatively well during the day and then suddenly, without warning, he would feel terrible. Social isolation is one of the symptoms of Bennett's illness. Bennett takes medications to manage his illness.

17. In October 2015, Bennett's primary care physician referred Bennett to Dr. Michael D. Garnett, a psychiatrist.

18. Bennett was again diagnosed with bipolar disorder.

19. Bennett's condition worsened over the holidays at the end of December 2015 and New Year's. He took two weeks off at the beginning of January 2016 as vacation days. After his vacation, Bennett requested a medical leave of absence from work to get treatment for his mental illness. Bennett's medical leave of absence commenced on January 19, 2016.

20. The stressors in Bennett's life at that time included his job, being a union steward, coaching a high school basketball team, being involved in his high school alumni association, and being a father to his nine-month-old child.

21. Dr. Garnett certified that taking time off from his job at BIW was medically necessary for Bennett.

22. At the same time, Dr. Garnett advised Bennett to keep coaching high school basketball as Dr. Garnett said this created continuity and got Bennett out of the house. It was a counterbalance to Bennett's tendency to seek social isolation because of his illness.

23. During an office visit with Dr. Garnett on March 9, 2016, Bennett was cleared to return to work part time at BIW on March 14, 2016.

24. Dr. Garnett's expectation was that Bennett would then be able to return to work full time, full duty after two weeks of part time work.

25. Bennett showed up at work on March 14, 2016. He told his supervisor that he was going to the medical department to get cleared per usual.

26. The medical department cleared Bennett and he reported for work.

27. Half an hour later, Bennett was called in to a meeting with Stacey Tower (Planning Manager), Nathan Doherty (Labor Relations Representative) and Gary Wright (union representative).

28. Tower and Doherty accused Bennett of working at another job (i.e. coaching) while he was on medical leave. Bennett told them that coaching is not his job. Bennett explained to Tower and Doherty that Dr. Garnett recommended that it was better for Bennett to coach while he was on leave from BIW so that he did not sit in the house in seclusion.

29. Tower and Doherty notified Bennett that his status during his medical leave of absence was changed to "absent without excuse."

30. Bennett was told that BIW had referred his case to a private investigator.

31. The investigator had conducted surveillance of Bennett on January 22 and January 28, 2016.

32. The investigator reported back to BIW that he saw and took pictures of Bennett while he was coaching. The investigator reported that he saw Bennett walking, squatting, clapping and moving without any visible limitations. He wrote in part, "I saw absolutely no visible indication to substantiate the subject is anything but a normal and fully capable human being."

33. The investigator was looking for signs of a physical impairment because BIW had told the investigator, falsely, that Bennett was on a leave of absence for a hand/wrist injury.

34. The investigator never spoke to Bennett and had no information about the status of his mental health.

35. Tower and Doherty insisted that Bennett was guilty of "job abandonment" and "fraud" and suspended him from his job.

36. Bennett was told to provide "proper justification" for his absence to BIW by March 16, 2016.

37. On March 16, 2016, Bennett obtained and submitted a letter from Dr. Garnett concerning his absence. Dr. Garnett reiterated that Bennett was ready to return to work on a part time basis on March 14, 2016. Dr. Garnett also wrote:

> "Please be advised that I specifically encouraged [Brian] to continue with, and complete, his commitment to coaching while he was out on short-term disability. This was a _therapeutic_ recommendation. The intent was to try to maintain what functioning he could at the time so as to avoid further regression of symptoms and functioning. The consequence of not completing that commitment would have been worse, and would have delayed his eventual recovery and return to work. That he followed a doctor's recommendation and maintained and completed his coaching should not be used against him now that he is ready to return to work…"

38. On about June 27, 2016, BIW received a copy of Bennett's complaint/charge of discrimination filed with the MHRC and EEOC from the MHRC.

39. Bennett's counsel also mailed a copy of the complaint/charge of discrimination directly to BIW and notified BIW that Bennett's complaint was the likely subject of a future lawsuit under the MHRA and ADA. That letter was also received by BIW on about June 27, 2016.

40. On June 30, 2016, BIW sent Bennett a letter stating that he had failed to provide proper justification for his absence from the company.

41. BIW's claim is false.

42. As noted above, Bennett provided BIW and its agent, Unum, with detailed information regarding his disability and his need for leave including forms completed by his psychiatrist describing Bennett's need for leave. Bennett also provided BIW with a signed authorization that permitted them to obtain all of his medical records directly from his providers. Bennett provided BIW with a letter from his psychiatrist which clearly and explicitly explained that the leave of absence from his job at BIW was medically necessary for Bennett.

43. On July 16, 2016, Bennett received a letter from BIW dated July 13, 2016 stating that his employment was terminated effective July 13, 2016 due to "employment abandonment."

44. BIWs stated reason for Bennett's termination is false and a pretext.

45. Bennett did not abandon his job.

46. Seth Fairbanks, Director of Labor Relations for BIW, signed and dated a statement on September 12, 2016 that indicates he made the decision to deny Bennett's leave of absence based on input from Dr. Maria E. Mazorra, Chief of Occupational Medicine for BIW.

47. Dr. Mazorra opined that Dr. Garnett was acting outside his role as a physician when he certified that it was medically necessary for Bennett to refrain from working as a Planning Tech for BIW while at the same time recommending that Bennett continue coaching high school basketball.

48. It was completely appropriate for Dr. Garnett to advise his patient how to get better, including a leave from BIW and continued coaching. Dr. Garnett's recommendation that Bennett continue coaching basketball was based on his ongoing treatment and interactions with Bennett and was an appropriate, therapeutic recommendation for an employee who was

temporarily unable to function as a Planning Tech at BIW. As Bennett's treating psychiatrist, Dr. Garnett was doing exactly what a doctor should do.

49. Dr. Mazorra's practice of rendering BIW friendly opinions regarding people she has not met and never treated is outside the role of a physician.

50. Dr. Mazorra's primary role at BIW is to give post hoc medical imprimatur to BIW's adverse treatment of employees with medical conditions.

*Summary*

51. Bennett took a medical leave of absence from BIW beginning in January 2016 to get treatment for and recover from his mental illness.

52. Bennett's bipolar disorder is a disability as defined by the MHRA and ADA. In particular, bipolar disorder is included in the MHRA list of "per se" disabilities, it significantly impaired mental health, particularly when viewed in the absence of mitigating measures, and substantially limited major life activities.

53. BIW regarded Bennett as having a disability and Bennett had a record of disability.

54. Bennett's bipolar disorder was also a serious health condition as defined by the FMLA.

55. Bennett's request for medical leave and a temporary part time schedule were requests for reasonable accommodations for purposes of the MHRA and ADA and were requests for protected leave under the FMLA.

56. Bennett was cleared to return to work as a Planning Tech on a part time basis beginning on March 14, 2016. Dr. Garnett's expectation was that Bennett would then be able to return to work full time, full duty after two weeks of part time work.

57.     BIW excluded Bennett from work from March 14, 2016 to July 13, 2016 and then terminated his employment after Bennett filed a charge/complaint of disability discrimination and retaliation with the MHRC and EEOC.

58.     BIW excluded Bennett from work and terminated his employment due to Bennett's actual and perceived disabilities.

59.     BIW excluded Bennett from work and terminated his employment because Bennett requested and needed a medical leave of absence from his Planning Tech job at BIW, a leave of absence that was deemed medically necessary by Bennett's treating psychiatrist, Dr. Garnett.

60.     BIW terminated Bennett in retaliation for asserting his rights under the MHRA and ADA by requesting a reasonable accommodation and for filing a complaint/charge of discrimination with the MHRC and EEOC.

61.     BIW failed to provide Bennett with the reasonable accommodations of medical leave and temporary part time duty and terminated him instead of providing him with reasonable accommodation.

62.     BIW has a practice of surveilling employees who require medical leave, wrongfully accusing the employees of fraud without a basis, and terminating the employees in question.

63.     BIW has a practice of disregarding information from its employees' medical providers that supports their need for medical leave and using opinions provided by its own medical department to support its discriminatory terminations of BIW employees who require medical leave.

64. BIW terminates employees who request and require medical leave for serious health conditions and disabilities because of their disabilities and need for leave.

65. BIW treats its employees who require medical leave for their disabilities and serious health conditions differently and worse than its non-disabled employees who are not subject to secret surveillance, unfounded allegations of fraud, and termination for requiring and using medical leave.

66. BIW failed to provide Bennett with FMLA leave and failed to permit Bennett to return to work at the conclusion of his protected leave in violation of the FMLA.

67. BIW terminated Bennett because of his use of FMLA protected leave and considered his FMLA protected leave as a negative factor in the decision to exclude him from the workplace and terminate his employment.

68. BIW unlawfully discriminated and retaliated against Bennett with malice or reckless indifference to his rights.

69. As a result of BIW's unlawful discrimination and retaliation against Bennett, he has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, humiliation, and other pecuniary and non-pecuniary losses.

70. Bennett has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and he will continue to suffer irreparable injury from his treatment by BIW unless and until BIW is enjoined by this court.

### COUNT I: MHRA
### UNLAWFUL DISABILITY DISCRIMINATION

71. Paragraphs 1-70 are incorporated by reference.

72. BIW's conduct constitutes unlawful discrimination against Bennett in violation of the MHRA.

## COUNT II: MHRA
## UNLAWFUL RETALIATION

73. Paragraphs 1-72 are incorporated by reference.

74. BIW violated the MHRA by retaliating against Bennett because he required and used a medical leave of absence as a reasonable accommodation for his disabilities.

75. BIW also violated the MHRA by retaliating against Bennett for filing a complaint/charge of discrimination with the MHRC

## COUNT III: MHRA
## FAILURE TO ACCOMMODATE

76. Paragraphs 1-75 are incorporated by reference

77. BIW violated the MHRA by failing to provide Bennett with reasonable accommodations for his disability.

## COUNT IV: ADA
## UNLAWFUL DISABILITY DISCRIMINATION

78. Paragraphs 1-77 are incorporated by reference.

79. BIW's conduct constitutes unlawful discrimination against Bennett in violation of the ADA.

## COUNT V: ADA
## UNLAWFUL RETALIATION

80. Paragraphs 1-79 are incorporated by reference.

81. BIW violated the ADA by retaliating against Bennett because he required and used a medical leave of absence as a reasonable accommodation for his disabilities.

82. BIW also violated the ADA by retaliating against Bennett for filing a complaint/charge of discrimination with the EEOC.

## COUNT VI: ADA
## FAILURE TO ACCOMMODATE

83.    Paragraphs 1-82 are incorporated by reference

84.    BIW violated the ADA by failing to provide Bennett with reasonable accommodations for his disability.

## COUNT VII: FMLA

85.    Paragraphs 1-84 are incorporated by reference.

86.    BIW violated Bennett's prescriptive and proscriptive rights under the FMLA.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A.    Declare the conduct engaged in by Defendant to be in violation of his rights;

B.    Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

C.    Order Defendant to reinstate Plaintiff or award front pay to Plaintiff;

D.    Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendant's discrimination;

E.    Award equitable-relief for back pay, benefits and prejudgment interest;

F.    Award compensatory damages in an amount to be determined at trial;

G.    Award punitive damages in an amount to be determined at trial;

H.    Award liquidated damages in an amount to be determined at trial;

I.    Award nominal damages;

J.    Award attorney's fees, including legal expenses, and costs;

K.    Award prejudgment interest;

L.        Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability;

M.       Require BIW to mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate disability discrimination, retaliation, violations of employees' FMLA rights in the future;

N.       Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

O.       Require that Defendant train all management level employees on the protections afforded by the MHRA, ADA, and FMLA;

P.       Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant excluded him from work and unlawfully terminated him because of disability discrimination and retaliation and in violation of the FMLA; and

Q.       Grant to Plaintiff such other and further relief as may be just and proper.

Dated: February 7, 2017

*/s/* Chad T. Hansen
chansen@maineemployeerights.com

Attorney for the Plaintiff

MAINE EMPLOYEE RIGHTS GROUP
92 Exchange Street 2nd floor
Portland, Maine 04101
Tel. (207) 874-0905
Fax (207) 874-0343